UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



KENNETH M.,[1]

                      Plaintiff,

v.                                              20-CV-00938-JLS

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                      Defendant.

## DECISION AND ORDER

Plaintiff Kenneth M. commenced this action under the Social Security Act, seeking review of the Commissioner of Social Security's determination that he was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 12. The Commissioner responded to the motion and cross-moved for judgment on the pleadings. Dkt. 15. Plaintiff replied. Dkt. 16.

For the reasons discussed below, the Court grants the Commissioner's motion for judgment on the pleadings and denies Plaintiff's motion.

## PROCEDURAL HISTORY

On December 15, 2016, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability since August

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this Decision and Order identifies Plaintiff by first name and last initial.

17, 2013. Dkt. 8, at 15.[2] Plaintiff's applications were denied initially on March 15, 2017. Tr. 15. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which occurred on January 22, 2019. Tr. 15. The ALJ issued a decision on April 18, 2019 finding that Plaintiff was not disabled pursuant to the Social Security Act. Tr. at 28-29. The Appeals Council denied Plaintiff's request for review, making the Commissioner's decision final. Tr. 1-6. Plaintiff then commenced this action. Dkt. 1.

## LEGAL STANDARDS

### I. District Court Review

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] Dkts. 8 and 9 consist of the transcript of proceedings before the Social Security Administration. All further references to Dkts. 8 and 9 are denoted "Tr. _" and reflect the pagination of the certified administrative record.

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citation omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schalk v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citation omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if there is "a reasonable basis for doubt whether the ALJ applied correct legal principles," applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *See Johnson*, 817 F.2d at 986.

## II. Disability Determination

An ALJ evaluates disability claims through a five-step process established by the Social Security Administration to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If the claimant does have any severe impairments, the ALJ proceeds to step three. *Id.* § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations and meets the duration requirement, the claimant is disabled. *Id.* §§ 404.1520(a)(4)(iii), (d).

But if the ALJ finds that no severe impairment or combination of impairments meets or equals an impairment in the regulations, the ALJ proceeds to calculate the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1520(a)(4)(iv), (e). The RFC is a holistic assessment that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for his or her collective impairments. *See id.* §§ 404.1520(e), 404.1545.

The ALJ then proceeds to step four and determines, using the claimant's RFC, whether the claimant can perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), (e). If the claimant can perform past relevant work, he is not disabled, and the analysis ends. *Id.* §§ 404.1520(a)(4)(iv), (f). But if the claimant cannot, the ALJ proceeds to step five. *Id.* §§ 404.1520(a), (f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Berry v. Schweiker*, 675 F.2d 464, 467

(2d Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), (g). Specifically, the Commissioner must prove the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotations and citation omitted).

## DISCUSSION

### I. The ALJ's Decision

The ALJ evaluated Plaintiff's claim for benefits under the process discussed above. *See generally* Tr. 15-30. At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity since the alleged onset date. Tr. 17-18. However, the ALJ then noted a twelve-month cessation in the work after the submission of Plaintiff's application, so the ALJ continued with the evaluation. Tr. 18. At step two, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease, right knee degenerative joint disease, deep vein thrombosis of the right lower extremity, obesity, chronic obstructive pulmonary disease, history of left renal cancer, status post left nephrectomy, generalized anxiety disorder, major depressive disorder, bipolar disorder, and panic disorder with agoraphobia. Tr. 18. At step three, the ALJ concluded that Plaintiff's impairment did not meet or medically equal the severity of the impairments listed in the regulation. Tr. 18-21. The ALJ then determined Plaintiff's RFC:

> [T]he claimant has a residual functional capacity to perform light work as defined in 20 CFR § 404.1567(a) and § 416.967(a) except he can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch,

5

and crawl. He can never work at unprotected heights or with moving mechanical parts. He can have occasional exposure to humidity, wetness, dust, odors, fumes, and pulmonary irritants, but can never have exposure to extreme cold or extreme heat. The claimant can perform simple, routine, and repetitive tasks. He can make simple work-related decisions and can tolerate few changes in a routine work setting defined as performing the same duties at the same station or location day to day. The claimant can have occasional and superficial contact with supervisors, coworkers, and the public.

Tr. 21.

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. Tr. 27. At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ relied on the testimony of a vocational expert and determined that jobs exist in significant numbers in the national economy that Plaintiff can perform. Tr. 27-28. These jobs include a routing clerk, housekeeping cleaner, and retail marker. Tr. 28. As a result, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, from August 17, 2013, through the date of her decision. Tr. 28.

## II. Analysis

Plaintiff claims that the ALJ's RFC finding is flawed and remand is warranted. *See generally* Dkt. 12-1. First, Plaintiff argues that the ALJ's physical RFC determination was not supported by substantial evidence. *See id.* at 12-16. Second, Plaintiff argues that the ALJ failed to properly evaluate Nurse Practitioner Salada-Conray's treating opinion. *See id.* at 17-20.

For the reasons below, the Court concludes that the ALJ's physical RFC finding was supported by substantial evidence, such as the medical assessments.

6

The ALJ considered the record as a whole and accounted for any inconsistencies in the record. The ALJ did not rely on her own interpretation of the raw medical data but, rather, relied on the medical evidence illustrated in the record. Finally, the ALJ gave sufficient weight to Nurse Practitioner Salada-Conray's assessment of Plaintiff, based on the evidence and inconsistencies in her reports.

### A. The ALJ's RFC determination is supported by substantial evidence.

The ALJ determined that Plaintiff retained the residual functional capacity to perform light work. Tr. 26. Plaintiff argues that the ALJ did not explain this finding or support it with substantial evidence. *See* Dkt. 12-1, at 1. Rather, Plaintiff argues that the ALJ "bridged the gap" between the raw medical information and the RFC determination with her own thought process. *See id*. Plaintiff argues that the ALJ based her RFC determination on her own lay judgment and interpretation of the raw medical data. *See* Dkt. 17, at 10. The Court disagrees.

An ALJ's RFC determination need not perfectly correspond with opinion evidence, so long as it is consistent with the record as a whole. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ need not recite every piece of evidence that supports her decision, so long as the record "permits [the reviewing court] to glean the rationale of an ALJ's decision." *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir. 1983). Moreover, where the record contains sufficient evidence to assess a claimant's RFC, an ALJ need not rely on opinion evidence at all. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020) ("Although there was

no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity.") (internal quotations omitted) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)).

An ALJ may not substitute her lay judgment for a competent medical opinion. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (summary order); *Lawton v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 378, 383 (W.D.N.Y. 2019) (explaining the ALJ is not a medical professional and cannot assess the RFC based on bare medical findings); *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) ("[A]n ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."). But ultimately it is the responsibility of the ALJ—not a medical source—to determine a claimant's RFC. *See Ramsey*, 830 F. App'x at 39. Where the record includes an assessment of the claimant's limitations, the record need not contain formal opinions regarding the claimant's RFC. *See Tankisi*, 521 F. App'x at 34 (holding that the medical record was sufficient to determine claimant's RFC, even though the record did not contain formal opinions on claimant's RFC). Moreover, an ALJ may properly summarize medical notes and discount portions of medical opinions, so long as the ALJ provides sufficient reasons for doing so. *See Ramsey*, 830 F. App'x at 39 (holding that the ALJ did not forge his own medical opinions based on raw data but,

rather, summarized the medical evidence and provided sufficient reasons for discrediting portions of the record).

Here, the ALJ did not interpret raw medical data into functional terms, but synthesized notes in the record that assessed Plaintiff's limitations based on medical assessments. *See* Tr. 21-27. The ALJ's decision contains a thorough discussion, with numerous cites to treatment and examination notes, of the medical evidence related to Plaintiff's physical impairments, including musculoskeletal issues, obesity, COPD, history of renal cancer, and deep vein thrombosis. Tr. 21-23. The ALJ also incorporated Plaintiff's hearing testimony as it related to these specific impairments. Tr. 21-23. Further, the ALJ accounted for heavier limitations than what the examiners opined, viewing the evidence in the light most favorable to the claimant and "out of an abundance of caution." *See, e.g.*, Tr. 22, 23, 25, 26. Because the record contains sufficient medical evidence regarding Plaintiff's limitations and capabilities, the ALJ did not err in evaluating the medical record to determine Plaintiff's RFC.

### B. The ALJ did not err in weighing NP Salada-Conray's opinion of the claimant's mental state.

Where there is conflicting evidence in the record, it is within the discretion of the ALJ to consider such contradictions. *See Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002) (explaining that it is within the province of the ALJ to resolve conflicting evidence between consultative examination findings and consultative physician's conclusions). Further, an ALJ may give less weight to a medical opinion that is inconsistent with the rest of the record. *See Michels v. Astrue,* 297 F. App'x

74, 76 (2d Cir. 2008) (holding that the ALJ could discredit physician's opinions in favor of a broader view of medical evidence, given the inconsistencies in the record); *Pellam v. Astrue,* 508 F. App'x 87, 90 (2d Cir. 2013) (noting that the ALJ need not accept a consultative examiner's opinion, especially where examiner's findings are inconsistent with contemporaneous medical opinions); *Carvey v. Astrue,* 380 F. App'x. 50, 53 (2d Cir. 2010) (holding that the record was sufficient to support the ALJ's decision not to give controlling weight to a physician, when their opinion was inconsistent with a majority of the other medical experts and physician's reports).

When mental health issues are involved, the Second Circuit has instructed that the longitude of the healthcare provider's relationship with the patient is particularly important, due to mental health's fluctuational characteristics. *See Estrella v. Berryhill,* 925 F.3d 90, 97 (2d Cir. 2019) ("Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.") (quoting *Garrison v. Colvin,* 759 R.3d 995, 1017 (9th Cir. 2014)). It is more accurate to have a long-range picture of the patient's mental health rather than a point-in-time diagnosis and/or analysis. *See id.* at 98 ("[I]n the context of mental illness . . . a one-time snapshot of a claimant's status may not be indicative of [their] longitudinal mental health.").

However, under the treating physician rule from the time of the ALJ's determination, the ALJ was not required to give controlling weight to a treating

10

nurse practitioner's (NP) opinion because nurse practitioners were considered non-acceptable medical sources. SSR 06-3p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006). While nurse practitioners' opinions may be entitled to some extra consideration based upon a long-standing relationship with the patient, *see, e.g.*, *Beckers v. Colvin*, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014) (explaining that non-acceptable medical sources, such as NPs, may be entitled to some extra consideration while not the same weight as a treating physician), here the ALJ discussed how NP Salada-Conray's determinations were inconsistent not only with the opinions of Dr. Santarpia and Dr. Dipeolu, but also with Plaintiff's statements and NP Salada-Conray's own findings. Tr. 24-25. Further, the ALJ thoroughly explained her reasoning for this weight determination in her opinion. *See id.*; SSR 06-3p. Therefore, the ALJ did not err in giving little weight to NP Salada-Conray.

Plaintiff argues that if there was inconsistency in the healthcare provider's decision, it was the ALJ's duty to obtain information from the provider to make a more informed decision. But this is only necessary if the record was not fully developed, which is not the case here. *See Shaffer v. Berryhill*, 16-CV-874-FPG, 2017 WL 6047816, at *3 (W.D.N.Y. Dec. 07, 2017) (while remand is warranted when the ALJ fulfills the duty to develop the record, if there are no obvious gaps in the medical record, the ALJ is not mandated to obtain the information). Therefore, the ALJ was not mandated to obtain this information—it was the claimant's duty to support his claims.

11

In sum, the ALJ considered all the medical evidence and analyzed inconsistencies in the record. Where substantial evidence exists to support both the claimant's position and the ALJ's decision against the claimant, the ALJ's finding must be upheld. *See McIntyre v. Colvin,* 758 F.3d 146, 149 (2d Cir. 2014) ("[I]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). Thus, the ALJ's decision to give little weight to NP Salada-Conray, and the ALJ's other determinations, based on the record as a whole, should be upheld.

## CONCLUSION

For these reasons, the Court GRANTS Commissioner's motion for judgment on the pleadings and DENIES Plaintiff's motion for judgment on the pleadings. The Commissioner's decision is AFFIRMED. The Clerk of the Court shall close this case.

SO ORDERED.

Dated: December 20, 2021
Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE